## CHARLES D. GIANETTI *v.* NORWALK HOSPITAL ET AL.
## (13415)

HEALEY, SHEA, GLASS, HULL and F. X. HENNESSY, Js.

Argued December 15, 1988—decision released April 25, 1989

*Judith M. Trutt*, with whom was *Alan Neigher*, for the appellant (plaintiff).

*Jay S. Kogan*, with whom, on the brief, was *John F. Fallon*, for the appellees (defendants).

ARTHUR H. HEALEY, J. The plaintiff, Charles D. Gianetti, a physician licensed to practice medicine in Connecticut, instituted this action against Norwalk Hospital, its president and certain of its administrators and physicians,[1] alleging breach of contract and antitrust violations, as well as seeking declaratory and injunctive relief. The action arose out of the alleged illegal refusal of the defendants to reappoint the plaintiff to the medical staff of the Norwalk Hospital for 1984. The case was referred to attorney state trial referee John J. Cotter. On March 11, 1987, he found that the bylaws of the Norwalk Hospital Association constituted an enforceable contract between Norwalk Hospital and the plaintiff and that the hospital's action in reviewing Gianetti's performance and the procedure by which he was not reappointed to the medical staff constituted a breach of the contract. The hospital filed an objection to the acceptance of the report of the attorney state

---

[1] The defendants are Norwalk Hospital, a nonprofit corporation organized under Connecticut law; William F. Hughes, M.D., and Horace Laffaye, M.D., the chairmen of the department of surgery of Norwalk Hospital; E. J. Tracey, M.D., chief of staff of Norwalk Hospital; Joel Singer, M.D., chief of the plastic and reconstructive surgery section of Norwalk Hospital; Norman A. Brady, president of Norwalk Hospital; Carmine Calabrese, M.D.; and Philip F. Corso, M.D.

trial referee. Thereafter, counsel for the parties filed a joint motion for reservation of legal issues pursuant to General Statutes § 52-235 (a).[2]

At this point, we should set out certain findings of the attorney state trial referee that will serve as background for the serious procedural problem that we encounter on this reservation. These include the following: Norwalk Hospital is a nonprofit corporation organized under the laws of the state of Connecticut and thus must conduct its affairs in compliance with General Statutes § 33-423 (c).[3] The hospital is a member of the Joint Commission on Accreditation of Hospitals that requires that its members adopt medical staff bylaws including provisions for due process fair hearings prior to termination of a doctor's privileges. The hospital medical staff bylaws in effect during 1983 were approved by the board of trustees in November, 1982,

---

[2] General Statutes § 52-235 (a), entitled "Reservation of questions of law," provides: "The superior court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the supreme court or appellate court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein."

This joint motion for reservation, which the Superior Court granted on February 16, 1988, provided for a reservation to the Appellate Court. Pursuant to Practice Book § 4023, the Supreme Court transferred this case to itself on April 14, 1988.

[3] General Statutes § 33-423 (c), which is found in Chapter 600 of the General Statutes, entitled "Nonstock Corporations," provides: "RESTRICTIONS ON PURPOSES AND POWERS OF CORPORATIONS. . . .

"(c) Nothing in this chapter shall be construed to authorize a corporation formed hereunder to conduct any affairs except in compliance with any laws of this state regulating or otherwise applying to the same. The provisions of this chapter govern all corporations, but notwithstanding the provisions of this chapter, where by law special provisions are made in the case of a designated class or classes of corporations governing the corporate procedure thereof in any respect, limiting or extending the powers thereof, conditioning action upon the approval of any agency of the state, or otherwise prescribing the conduct of such corporations, such procedure, powers, action and conduct shall be governed by such special provisions whether or not such corporations are formed under this chapter."

and became effective on approval. Article III, § 2 (b),[4] of the bylaws provides that written acceptance of membership on the medical staff constitutes certification that the staff member will abide by the bylaws, rules and regulations of the medical staff and the Norwalk Hospital Association.

The plaintiff is a licensed physician specializing in plastic surgery, who, in 1974, was appointed a provisional member of the hospital medical staff. In 1976, the plaintiff was granted full privileges as an assistant attending physician at the hospital. The plaintiff's privileges were renewed annually by the hospital through the period ending December 31, 1983. As a condition of membership on the hospital's medical staff, the plaintiff agreed, in writing, to abide by the medical staff bylaws. One of the purposes of the bylaws stated in article II, § 4, is "to initiate and maintain rules and regulations for the self-government of the medical staff." After purportedly following certain procedures referred to in the bylaws, including a vote of the medical staff to deny the plaintiff's reappointment to the medical staff, the hospital board of trustees ratified the plaintiff's nonreappointment to the medical staff of the hospital.[5] Article V, § 2, of the bylaws

[4] Article III, § 2 (b), of the Norwalk Hospital medical staff bylaws (a copy of which was in evidence) provides: "Acceptance of membership on the medical staff shall constitute the applicant's certification that he will abide by the Principles of Medical Ethics of the American Medical Association, by the Code of Ethics of the American Osteopathic Association or by the Code of Ethics of the American Dental Association whichever is applicable. These codes of ethics are appended to and made a part of these bylaws. Written acceptance of membership shall further constitute the applicant's certification that he will abide by the bylaws, rules and regulations of the medical staff and the Norwalk Hospital Association."

[5] The attorney state trial referee made a number of detailed findings concerning certain provisions of the bylaws that govern the procedure involving the steps required in the reappointment or nonreappointment of a member of the hospital medical staff, as well as the failure of the hospital to observe some of them.

governs the action of the board of trustees when a recommendation of nonreappointment is received from the medical staff. The attorney state trial referee also determined that the Norwalk Hospital medical staff bylaws "constituted an enforceable contract" between the hospital and the plaintiff.

With this background, we now look at the specific questions reserved to us. The questions that we are asked to answer on this reservation are: "(1) Do the bylaws of a Connecticut Hospital constitute an enforceable contract between the hospital and its medical staff?"; and (2) "Are administrative decisions by a hospital as to the rights of its medical staff under its bylaws subject to judicial review?" From everything that is properly before us on this reservation, it is apparent to us that the questions as reserved are framed too broadly for us to be able to "give to each a categorical or very definite answer," as we are required to do on a reservation. *Rothkopf* v. *Danbury,* 156 Conn. 347, 351, 242 A.2d 771 (1968); *Second National Bank* v. *Montesi,* 144 Conn. 311, 315, 130 A.2d 796 (1957); *Ericson* v. *Childs,* 124 Conn. 66, 82, 198 A. 176 (1938); see Practice Book § 4147. Particularly, the framing of the reserved questions, applying as they do, to *any* Connecticut hospital renders it impossible to answer these questions on a record that is replete with the controversy only between this plaintiff and the Norwalk Hospital and the other named defendants and not to any other Connecticut hospital. The *only* bylaws in the record are those of the Norwalk Hospital; there are no bylaws of any other Connecticut hospital before us. The briefs of the parties, as well as their oral argument before us, also developed at length the claims between the plaintiff physician and this defendant hospital. "A trial court or a judge cannot confer jurisdiction on this court merely by reserving questions for our advice"; *Rothkopf* v. *Danbury,* supra, 350; see

*Hoblitzelle* v. *Frechette,* 156 Conn. 253, 255, 240 A.2d 864 (1968); and, thus, "cannot, by a reservation, compel action by this court." *Barr* v. *First Taxing District,* 147 Conn. 221, 223, 158 A.2d 740 (1960); see *Potter* v. *Appleby,* 136 conn. 641, 643, 73 A.2d 819 (1950). This court is not bound to entertain a reservation, and whether it will do so rests in its discretion. *Barr* v. *First Taxing District,* supra. The extent to which we will entertain a reservation also rests in the discretion of this court. *New Haven* v. *New Haven Water Co.,* 132 Conn. 496, 516, 45 A.2d 831 (1946).

We cannot entertain either of the two questions as framed by the parties. Both questions involve *any* Connecticut hospital. Moreover, answering either question would obviously involve physicians and hospitals that are not parties to this matter. One of the prayers for relief on the contract counts of the complaint is "for a declaratory ruling that the actions of the defendants as herein stated be declared null and void, and of no effect." If we were to entertain the questions as framed, we would be handing down a declaratory ruling affecting the rights and liabilities of all Connecticut hospitals and their medical staff members. This we cannot and will not do because the record reveals no attempt to notify anyone other than the defendants named in the pending action. "Practice Book § 309 (d) provides that the court will not render declaratory judgments upon the complaint of any person 'unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof.' This court has consistently required strict adherence to this rule. *Gannon* v. *Sanders,* [157 Conn. 1, 5, 244 A.2d 397 (1968)]; *Wenzel* v. *Danbury,* 152 Conn. 675, 677, 211 A.2d 683 (1965); see also *Salamandra* v. *Kozlowski,* 173 Conn. 136, 138 n.2, 376 A.2d 1103 (1977)." *Cavalli* v. *McMahon,* 174 Conn. 212, 215, 384 A.2d 374 (1978).

We have, however, entertained reservations where, although the reservation was not in proper form, the importance of the public interest in the issues involved was evident to us as it is here. See, e.g., *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 718–19, 184 A.2d 42 (1962); *Stanton* v. *Stanton,* 140 Conn. 504, 509, 101 A.2d 789 (1953); *Barnes* v. *New Haven,* 140 Conn. 8, 11, 98 A.2d 523 (1953); *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 133, 55 A.2d 732 (1947); *New Haven* v. *New Haven Water Co.,* supra; cf. *Second National Bank* v. *Montesi,* supra, 315. This court has overlooked a defect in a reservation because of "the importance of the issues involved and the fact that the claims of the *parties* have been fully presented in argument and brief" (emphasis added); *General Motors Corporation* v. *Mulquin,* supra; that is true here. Where the questions propounded are improperly framed, we have to answer the questions "in a manner which will be adequate to guide the trial court in rendering judgment." *Stanton* v. *Stanton,* supra. At oral argument, we pointed out to the parties that the two questions as reserved would be impossible to answer on the state of this record.

Under the circumstances of this case, we, therefore, will answer two questions on this reservation with the first question reframed as follows: (1) Do the bylaws of the Norwalk Hospital constitute an enforceable contract between that hospital and Dr. Gianetti as a member of its medical staff? We entertain the second question reframed as follows: (2) Are administrative decisions by the Norwalk Hospital, as to the rights of Dr. Gianetti as a medical staff member under its bylaws, subject to judicial review?

Turning to the first question, it must be answered in the negative, i.e., the bylaws of the Norwalk Hospital do *not* constitute a contract between it and the plain-

tiff as a member of its medical staff.[6] The plaintiff maintains in his brief that the "association between the hospital and its staff is based upon contract; once the by-laws are approved by the hospital's board of directors, 'they became an *integral part* of the contractual relationship between the hospital and the members of the staff.'" (Emphasis added.) *Berberian* v. *Lancaster Osteopathic Hospital,* 395 Pa. 257, 263, 149 A.2d 456 (1959). In arguing that "[t]he bylaws were clearly structured as a contractual obligation," he refers, inter alia, to the fact that one of the purposes of the bylaws was "[t]o initiate and maintain rules and regulations for the self-government of the medical staff." Norwalk Hospital Medical Staff Bylaws, art. II, § 4. He also refers to the provision of the bylaws that "[w]ritten acceptance of membership shall further constitute the applicant's certification that he will abide by the bylaws, rules and regulations of the Medical Staff and the Norwalk Hospital Association." Norwalk Hospital Medical Staff Bylaws, art. III, § 2 (b).

The hospital argues that its bylaws do not constitute a contract between it and the members of its medical staff but do constitute "a guide for the hospital's self-government." General contract principles, it maintains, support its claim that there is no enforceable contract here, arguing that the bylaws were not only promulgated just for "its own self-government and self-guidance," but that they also are self-imposed strictures

---

[6] We have said that "[w]hether a contract exists is a question of fact for the court to determine." *Randolph Construction Co.* v. *King's East Corporation,* 165 Conn. 269, 277, 334 A.2d 464 (1973); *Bridgeport Pipe Engineering Co.* v. *DeMatteo Consruction Co.,* 159 Conn. 242, 249, 268 A.2d 391 (1970); *Molloy* v. *Rourke,* 83 Conn. 196, 199, 76 A. 517 (1910). We have also suggested that the existence of a contractual relationship may be a mixed question of fact and law. See *Connecticut Steel Co.* v. *National Amusements, Inc.,* 179 Conn. 210, 425 A.2d 1260 (1979).

We do not find facts. In this case, on the record, we are in a position to decide whether, as a matter of law, a valid contract existed between the plaintiff and the hospital.

that in no way resulted from negotiations between it and the plaintiff. It argues also that they cannot be a contract with the plaintiff because the authority to adopt the bylaws "was unilaterally vested in the governing board" and acceptance of them does not constitute the acceptance of a contract. Recognition of the bylaws as an enforceable contract with its staff physicians, to whom it only granted "privileges," "undermines" a private hospital's primary duty to protect the lives, health and welfare of its patients, according to Norwalk Hospital. It takes this position while acknowledging that some jurisdictions have held that medical staff bylaws do constitute a contract between a hospital and members of its medical staff.

Under traditional contract law, we conclude that the Norwalk Hospital medical staff bylaws, by themselves, do not constitute an enforceable contract between this hospital and the plaintiff. This is so because the governing board of the Norwalk Hospital already has a legal duty imposed by Connecticut state department of health regulations to adopt "bylaws, rules and regulations, including medical staff bylaws."[7] Regs., Conn. State Agencies § 19-13-D3 (b) (1) (A). The legal duty to

---

[7] Sections 19-13-D2 and 19-13-D3 of the Regulations of Connecticut State Agencies provide in relevant part: "Sec. 19-13-D2 OPERATION AND MAINTENANCE All hospitals licensed under sections 19-32 to 19-42 of the general statutes, as amended, shall comply with the requirements set forth in sections 19-13-D2 to 19-13-D12, inclusive, before a license is issued."

"Sec. 19-13-D3. SHORT-TERM HOSPITALS, GENERAL AND SPECIAL . . . .

"(b) ADMINISTRATION. (1) The hospital shall be managed by a governing board whose duties shall include, as a minimum: (A) Adoption of bylaws, rules and regulations, including medical staff bylaws. . . .

"(c) MEDICAL STAFF. . . . (2) The medical staff shall adopt written rules and regulations governing its own activities, subject to approval by the governing board of the hospital. As a minimum, these shall include: (A) Method of control of privileges granted to members of the medical staff . . . . (F) procedure for recommending appointments to the medical staff and for hearing complaints regarding the conduct of members and referring the same, with recommendations, to the governing board."

adopt medical staff bylaws under the regulation, a fortiori, imposes a legal duty upon the Norwalk Hospital to abide by such bylaws.

Agency regulations, appropriately issued, have the force and effect of a statute. See *Fusco-Amatruda Co. v. Tax Commissioner,* 168 Conn. 597, 604, 362 A.2d 847 (1975); *Hartford Electric Light Co. v. Sullivan,* 161 Conn. 145, 154, 285 A.2d 352 (1971). We therefore construe agency regulations in accordance with accepted rules of statutory construction. 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1985) § 31.06. Just as it is accepted that the legislature does not enact superfluous statutes; *State* v. *Ellis,* 197 Conn. 436, 472–73, 497 A.2d 974 (1985); *Amsel* v. *Brooks,* 141 Conn. 288, 295, 106 A.2d 152, appeal dismissed, 348 U.S. 880, 75 S. Ct. 125, 99 L. Ed. 693 (1954); the same is true of administrative regulations. If the department of health had not intended that the hospital abide by its medical staff bylaws, then the requirement that it enact such bylaws would be superfluous. Therefore, because the hospital has this preexisting legal duty to adopt and abide by its medical staff bylaws, that hospital's agreement to do just that cannot constitute valid consideration to support an enforceable contract.[8]

[8] We note that "[t]he Joint Commission on Accreditation of Hospitals, to which Norwalk Hospital belongs, requires its members adopt medical staff bylaws which provide for fair-hearing and appellate review mechanisms prior to the termination of a doctor's privileges. JCAH Accreditation Manual for Hospitals, 1983, 1988, Standard MS 2.4.2." A highly effective pressure for hospital professional discipline has come from the Joint Commission on Accreditation of Hospitals that requires that its members maintain minimum professional standards in all phases of hospital administration. Comment, "Hospital Staff Privileges: The Need for Legislation," 17 Stan. L. Rev. 900, 903 (1965).

"Although [accreditation by the Joint Commission on Accreditation of Hospitals] is not legally required, both public and private hospitals actively seek JCAH accreditation, which affords hospitals substantial financial benefits and professional prestige." Note, "Medical Staff Membership Decisions: Judicial Intervention," 1985 U. Ill. L. Rev. 473, 476.

"The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable. *Osborne* v. *Locke Steel Chain Co.,* 153 Conn. 527, 530, 218 A.2d 526 [1966]. Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. Id., 531; *Finlay* v. *Swirsky,* 103 Conn. 624, 631, 131 A. 420 [1925]." *State National Bank* v. *Dick,* 164 Conn. 523, 529, 325 A.2d 235 (1973). The hospital's "promise" to the plaintiff to perform what it already had the pre-existing legal duty to do did not constitute valid consideration. See *Holcomb* v. *United States,* 622 F.2d 937, 941 (7th Cir. 1980) ("The general rule is that a promise to do something which the promisor is already legally obligated to do does not constitute consideration. 17 Am. Jur. 2d, Contracts § 119; Restatement, Contracts § 76"); *Estate of Bogley* v. *United States,* 514 F.2d 1027, 1033 (Ct. Cl. 1975); *Borbely* v. *Nationwide Mutual Ins. Co.,* 547 F. Sup. 959, 980 (D.N.J. 1981) ("[t]o be enforceable, a contract must be supported by valuable consideration"); *Gruber* v. *Klein,* 102 Conn. 34, 36–37, 127 A. 907 (1925); *County of Clark* v. *Bonanza No. 1,* 96 Nev. 643, 650–51, 615 P.2d 939 (1980) ("[c]onsideration is not adequate when it is a mere promise to perform that which the promisor is already bound to do"); *Novack* v. *Cities Service Oil Co.,* 149 N.J. Super. 542, 549, 374 A.2d 89 (1977); 1 S. Williston, Contracts (3d Ed. Jaeger) § 132; 17 C.J.S., Contracts § 111. Furthermore, the plaintiff makes no claim that he had any input into the bylaws and he does not respond to the hospital's argument that the "strictures in the Bylaws . . . in no way resulted from the negotiations between the Hospital and the Plaintiff." We therefore answer the first question, "No."

We now take up the second question: Are administrative decisions by the Norwalk Hospital, as to the

rights of Dr. Gianetti as a medical staff member under its bylaws, subject to judicial review? Initially, we point out that our answer "No" to the first question does not control our answer to this question, to which we answer, "Yes."

In this second question, we are not asked, as in the first question, whether the bylaws of the Norwalk Hospital, per se, constitute an enforceable contract, but rather whether the administrative decisions as to the rights of the plaintiff as a member of its medical staff under its bylaws are subject to judicial review. It is obviously a broader question than the first in that it includes more than a consideration of the bylaws alone. The question encompasses the circumstances of the hospital's administrative decision not to reappoint this plaintiff under its bylaws as those circumstances are set out in the factual findings of the attorney state trial referee.

With this question, we are presented with the plaintiff, a physician who, already a medical staff member with privileges, has been denied reappointment[9] by the hospital purportedly acting within its bylaws. An examination of the hospital's medical staff bylaws discloses that the hospital clearly intended that membership on its medical staff was a "privilege" that it might or might not extend to a physician. It can hardly be said that the hospital must extend the privileges to every physician who seeks them. Once this hospital, however, has agreed to extend privileges to a physician, the hospital has changed its position with reference to that physician. By agreeing to extend privileges to the plaintiff physician, the hospital has then done something it was not already bound to do. See *State National Bank*

[9] We note that this reservation comes to us in the context of the reappointment of the plaintiff who is already a medical staff member and not an initial application for medical staff membership. Thus, there is no doubt that the provisions of the medical staff bylaws of the Norwalk Hospital apply to the plaintiff.

v. *Dick,* supra, 529; cf. *Associated East Mortgage Co.* v. *Highland Park, Inc.,* 172 Conn. 395, 404, 374 A.2d 1070 (1977). In granting privileges, this hospital extended to the plaintiff those benefits to his medical practice that are to be gained by the use of the hospital, including its facilities and admissions to the hospital. "Whatever else the granting of staff privileges may connote, it is clear . . . that it [at least] involves a delegation by the hospital [to the physician] of authority to make decisions on utilizations of its facilities." *Mt. Sinai Hospital of Greater Miami, Inc.* v. *Weinberger,* 517 F.2d 329, 338 (5th Cir. 1975), cert. denied, 425 U.S. 935, 96 S. Ct. 1665, 48 L. Ed. 2d 176 (1976). In return for that, the plaintiff agreed to abide by its medical staff bylaws. Therefore, the requisite contractual mutuality was then present. *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 652-53, 353 A.2d 714 (1974). This agreement was supported by valid consideration. See *State National Bank* v. *Dick,* supra; *Osborne* v. *Locke Steel Chain Co.,* supra, 531. The hospital changed its position by granting medical staff privileges and the plaintiff physician has likewise changed his position in doing something he was not previously bound to do, i.e., to "abide" by the hospital medical staff bylaws. Therefore, there is a contractual relationship between the hospital and the plaintiff.

As discussed earlier, it is inherent in this contractual relationship that the hospital must obey its own bylaws. It is crucial to understand that the medical staff bylaws, per se, do not create a contractual relationship between the hospital and the plaintiff but because of the undertakings of the plaintiff and the hospital and because the hospital has a duty to obey its bylaws, the bylaws have now become "an enforceable *part* of the contract" between the hospital and this physician to whom it has given privileges at the hospital. (Emphasis added.) *Pariser* v. *Christian Health Care Systems, Inc.,* 816

F.2d 1248, 1251 (8th Cir. 1987); *Adler* v. *Montefiore Hospital Assn. of Western Pennsylvania,* 453 Pa. 60, 311 A.2d 634 (1973), cert. denied, 414 U.S. 1131, 94 S. Ct. 870, 38 L. Ed. 2d 755 (1974) ("[t]he bylaws enacted and approved by the Hospital are *an integral part* of the contractual relationship with the [physician]") (emphasis added); see also *Nagib* v. *St. Therese Hospital, Inc.,* 41 Ill. App. 3d 970, 971, 355 N.E.2d 211 (1976). As mentioned earlier, the plaintiff's brief acknowledges that once the bylaws are approved by the board of trustees, "they become an 'integral part of the contractual relationship between the hospital and the members of the staff.' " Because issues of contractual rights and duties are subject to judicial review, it follows that because the Norwalk Hospital medical staff bylaws are an integral part of the contractual relationship between the plaintiff and this hospital, actions under these bylaws are also subject to judicial review.

At this point, we note that, in resolving the issue of judicial reviewability of a hospital's administrative decisions concerning medical staff membership, some jurisdictions have focused on the distinction between public and private hospitals. See note, "The Physician's Right to Hospital Staff Membership: The Public-Private Dichotomy," 1966 Wash. U.L.Q. 485, 495. The majority rule appears to be to refuse judicial review of exclusions from the medical staffs of private nonprofit hospitals. See, e.g., *Shulman* v. *Washington Hospital Center,* 222 F. Sup. 59, 63 (D.D.C. 1963); *Silver* v. *Castle Memorial Hospital,* 53 Haw. 475, 476–78, 497 P.2d 564 (1972); *Barrows* v. *Northwestern Memorial Hospital,* 123 Ill. 2d 49, 525 N.E.2d 50, 51–52 (1988); note, "Medical Staff Membership Decisions: Judicial Intervention," 1985 U. Ill. L. Rev. 473, 482; C. Groseclose, "Hospital Privilege Cases: Braving the Dismal Swamp," 26 S.D.L. Rev. 1, 10 (1981). As opposed to public hospitals, this view accords private hospitals "the

absolute right to exclude any physician from [its medical staff]"; *Silver* v. *Castle Memorial Hospital, Inc.,* supra, 476–77; without the opportunity for judicial review. This position has been referred to as the "rule of nonreview." See, e.g., *Jain* v. *Northwest Community Hospital,* 67 Ill. App. 3d 420, 425, 385 N.E.2d 108 (1978). In Connecticut, the public/private dichotomy was addressed in *Edson* v. *Griffin Hospital,* 21 Conn. Sup. 55, 144 A.2d 341 (1958). In that case, the plaintiff sought injunctive relief against a curtailment of his existing staff privileges at the defendant hospital. The *Edson* court applied the public/private dichotomy and said that the defendant was "a private hospital with the right to exercise control over its own internal operations and management."Id., 59. Although *Edson* did not involve any contractual issue, that court found that "[t]he general rule seems to be that a private hospital has the right to exclude any physician from practicing therein, and such exclusion rests with the sound discretion of the managing authorities." Id., 60. The *Edson* opinion and those of other courts that rely on the public/private hospital distinction to deny judicial review, however, are inapposite where, as in this case, there is a contractual relationship of which the staff bylaws are an integral part. Implicit in that contractual relationship is the right of all of the parties to protect their contract rights through judicial proceedings.

The case of *Greisman* v. *Newcomb Hospital,* 40 N.J. 389, 192 A.2d 817 (1963), although not involving a contractual relationship between the plaintiff and the defendant hospital, also addressed the public/private dichotomy. Greisman was denied medical staff privileges at the defendant hospital because he was an osteopath. The defendant maintained that it was immune from judicial review of its denial because it was a private hospital. The *Greisman* court, in discussing judicial review of the defendant hospital's decision to

exclude the plaintiff, said: "[Hospital officials] must recognize that their powers, particularly those relating to the selection of staff members, are powers in trust which are always to be dealt with as such," and courts will intervene to enforce judicially this fiduciary concept. Id., 404; see *Silver* v. *Castle Memorial Hospital,* supra; *Woodard* v. *Porter Hospital, Inc.,* 125 Vt. 419, 423, 217 A.2d 37 (1966). This rationale from *Greisman,* although, like *Edson,* not a case involving a contractual relationship, gives support to the propriety of reviewing medical staff decisions made under staff bylaws.

Furthermore, judicial review of private hospital administrative decisions is hardly a novel concept. While a majority of jurisdictions continues to refuse judicial review of exclusion from the medical staffs of nonprofit private hospitals, there are a number of those states that still adhere to the position that, nevertheless, a private hospital must comply with the procedural requirements in its own medical staff bylaws to revoke already existing staff privileges or be subject to limited judicial review. See *Margolin* v. *Morton F. Plant Hospital Assn., Inc.,* 348 So. 2d 57 (Fla. App. 1977); *Spencer* v. *Community Hospital of Evanston,* 87 Ill. App. 3d 214, 216, 408 N.E.2d 981 (1980) (where physician's existing staff privileges are revoked or reduced, private hospital must follow its bylaws or be subject to limited judicial review); *Jain* v. *Northwest Community Hospital,* supra, 425; *Nagib* v. *St. Therese Hospital, Inc.,* supra; *Gotsis* v. *Lorain Community Hospital,* 46 Ohio App. 2d 8, 19–21, 345 N.E.2d 641 (1974); accord *Shulman* v. *Washington Hospital Center,* supra, 63 (dicta); see also C. Groseclose, supra, 11. These cases also give support to our conclusion permitting judicial review of such administrative decisions.

In sum, we conclude that there is a contractual relationship between Norwalk Hospital and the plaintiff,

of which the Norwalk Hospital's medical staff bylaws are an integral part. The rights and duties arising out of this contractual relationship, as in any contractual relationship, are subject to judicial review. We accordingly answer the second question, "Yes."

No costs will be taxed to either party.

In this opinion the other justices concurred.