[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit by Doctor Owens for breach of contract and negligent infliction of emotional distress in connection with the defendant hospital's failure to reappoint the plaintiff to its medical staff, thereby, , terminating his, privileges at the defendant hospital.
Plaintiff at the time of his non-reappointment was a busy neurosurgeon admitting some 200 surgical cases to the defendant hospital per year, and seeing numerous other patients for non-surgical treatment.
Doctor Owens had surgical privileges at the defendant New Britain General Hospital for many years prior to the events which led up to his non-reappointment, and this lawsuit. Depending on whose analysis one adopts, the events which culminated in Doctor Owens' non-reappointment began in either 1985 or 1982.
In 1982, at the instigation of Doctor Strauch, a review of the neurosurgical section at New Britain General Hospital was undertaken by two outside neurologists. At the time the plaintiff was the head of the section, and the CT Page 7731 of the review by Doctors Collins and Schlesinger was, inter alia, that Doctor Ownes was surgically intervening with disk operations where the reviewing doctors felt the criteria for such surgical intervention was less thorough than they deemed appropriate. A procedure was implemented by Doctor Strauch to which Doctor Owens agreed, whereby second opinions would be obtained before Doctor Owens would perform disk surgery. Other requirements for psychiatric consults for patients who were to undergo certain other procedures were also instituted. A Doctor Simon was to monitor the implementation of the Collins/Schlesinger report.
In 1985, Doctor Strauch filed a formal request for corrective action in accordance with the medical staff bylaws of the defendant hospital. The Ad Hoc Committee appointed in accordance with the bylaws recommended an indefinite suspension of privileges concerning spinal cord surgery, a further committee chaired by Doctor Devers was convened, again in accordance by the bylaws, and the plaintiff's attempts to resist a formal imposition of restrictions on his hospital privileges was on its way to Appellate Review when, on June 27, 1986, the plaintiff's request for review of the imposition of restrictions was withdrawn. The main reason, the court finds, for the withdrawal of that appeal was that the Staff Executive Committee had recommended that Doctor Owens not be reappointed to the medical staff, thereby terminating his privileges. The non-reappointment proceeding went through a Staff Executive Committee hearing, a series of hearings conducted by a committee chaired by Doctor Dinep, and an Appellate Review Committee which ultimately upheld the termination of the plaintiff's privileges at New Britain General Hospital. Plaintiff claims that the entire proceeding was "poisoned" by the failure of the hospital to follow its bylaws, particularly at the early stages prior to 1985. However, plaintiff also points out numerous claimed violations of the hospital bylaws in the proceedings concerning imposition of restrictions on the plaintiff's practice and in the non-reappointment hearings, contending vigorously that the entire process was a seamless piece of unfairness in violation of his contractual rights with the hospital.
Defendant takes the position that the defendant hospital, as a private, non-public institution, is insulated from judicial review beyond a limited, "administrative appeal type" review, and that the court need only determine if the bylaws were followed, and if they were, plaintiff must lose.
At the outset it seems sensible to dispose of two technical claims, one raised by each side. Plaintiff's Exhibit 17, the minutes of the joint conference of June 12, 1986 CT Page 7732 clearly indicates that the hospital deferred action on Doctor Owens' annual reappointment which would have been effective October 1, 1986, pending resolution of the proceedings concerning his non-reappointment. During the pendency of the proceedings, the hospital maintained Doctor Owens' privileges with restrictions requiring second opinions before spinal cord surgery was to be permitted. Through clerical error the "usual" reappointment letter was sent to Doctor Owens, although he was promptly notified shortly after he received that letter that the letter was an error. Doctor Owens at no time was misled or changed his position in any way. The court finds that that letter was not a reappointment and will decide the issue of Doctor Owens' non-reappointment to the staff of New Britain General Hospital on the merits.
Not to be outdone, defendant takes the position that since the hospital cannot find Doctor Owens' personnel file, in which Doctor Owens' annual return of his acceptance of the appointment and agreement to follow the medical staff bylaws would have been filed, plaintiff has failed in his burden to prove the existence of a contract between Doctor Owens and New Britain General Hospital. The court finds that Doctor Owens did indeed send back the required forms and did indeed agree to follow the hospital bylaws for every year through and including the appointment commencing October 1, 1985.
The path which the court must follow has been clearly laid out by our Supreme Court in Gianetti v. Norwalk Hospital,211 Conn. 51 (1989). That case holds that, while the mere establishment of bylaws does not create a contract between an attending physician and the hospital at which he enjoys privileges, an agreement by such a doctor to comply with the bylaws, coupled with an agreement by the hospital to extend privileges to a physician, creates the required mutuality of contract necessary to form a contractual relationship between the hospital and the plaintiff. Gianetti v. Norwalk Hospital, supra, at 63. Thus, "because of the undertakings of the plaintiff and the hospital and because the hospital has a duty to obey its bylaws, the bylaws have now become `an enforceable part of the contract' between the hospital and this physician to whom it has given privileges at the hospital." (citations omitted) "The bylaws enacted and approved by the hospital are an integral part of the contractual relationship with the physician." Gianetti, supra, at 64. "Because issues of contractual rights and duties are subject to judicial review. . . actions under these by-laws are also subject to judicial review." Gianetti, supra, at 64. Thus, the court approaches this case just as it would approach any other case claiming a violation of contract and a negligent infliction of emotional distress by the breach of that contract. CT Page 7733
After an exhaustive review of the transcript of each and every proceeding conducted by the various hospital committees, and a less exhaustive review of Doctor Owens' handwritten comments on copies of the medical files which formed the basis of the Simons report (Plaintiff's exhibit 35a) the court finds that there has been no breach of contract by the defendant and for that reason, judgment will enter for the defendant on the complaint.
To be sure there were instances where the hospital behaved other than it was required to behave under the bylaw requirements, most notably in 1985 when Doctor Owens had delivered Plaintiff's exhibit 35a to Doctor Strauch by way of rebuttal to the Simons Report. That box of materials was apparently Doctor Owens' only copy, and his initial request for the return of the material to prepare for the first committee hearing in the fall of 1985 was denied. That erroneous behavior, however, was rectified by the return of Doctor Owens' materials in time, the court finds, for him to make effective use of that material in the first and subsequent hearings conducted in his case.
So it is with each of plaintiff's claimed defalcations on the part of the defendant hospital. Where there was a technical violation, there was ample cure and no prejudice so that there was no breach by defendant.
The committees hearing the non-reappointment issue considered, to be sure, the material which had been presented at some of the hearings on the restriction of privilege portion of Doctor Owens' proceedings. Doctor Owens and his able counsel were well able to respond and reply to those issues. Similarly, when the Staff Executive Committee decided to consider new material (material based on recent actions by Doctor Owens), such as the incident involving a hospital patient and the contretemps with Doctor Nourizadeh, extra care was taken on the part of the hospital to conduct additional sessions to incorporate the new material so as to fairly put the plaintiff on notice and to permit him to respond adequately.
It will serve little purpose to detail the dozens of factual claims since none of them amount to anything more serious than the two described above. The conclusion reached by the court is that the procedures used by the hospital were in accordance with the bylaws. While the outcome of those procedures were devastating to Doctor Owens, the proceedings were fairly conducted by fair-minded persons, and afforded to the plaintiff all of the rights to which he was entitled under CT Page 7734 his contract with the defendant hospital.
There is, however, one remaining issue concerning the events surrounding Doctor Owens' non-reappointment and the applicability of the medical staff by laws. Plaintiff claims that a portion of the non-reappointment process was a proceeding under Article VII of the medical staff bylaws (Plaintiff's Exhibit 5). Therefore, plaintiff argues, he was entitled to an Ad Hoc Committee prior to the events which did transpire. The court finds that the June, 1986 proceedings of the SEC were nothing more than an additional proceeding under Article V, that is, a non-reappointment recommendation, and the court finds that the hospital followed those required procedures thoroughly.
Finally, the court finds that the plaintiff's claim that the "disruptive physician" charge was a new charge to which he was entitled to additional notice, was in reality nothing more than fair argument from the facts already properly brought before the various committees and of which facts the plaintiff had ample notice and opportunity to respond.
Judgment for defendant.
KOLETSKY, J.