[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] REPORT OF JUDGE TRIAL REFEREE ON FACTS AND EQUITIES OF PARTIES
 FACTS
On June 12, 1986, the defendants, Kenneth Rohlman (Rohlman) and Carol Rohlman, his former wife, n.k.a. Carol Young (Young), executed a mortgage note (note) to pay to the order of the First Savings Bank, F.A., the principal sum of $170,000 and interest. To secure the note, they executed a deed (deed), mortgaging a parcel of land, known as 1285 Boston Post Road (property), situated in the town of Madison (town), Connecticut, to the First Savings Bank. The plaintiff, Citizens Savings Bank (bank), alleges that Rohlman was, and Young was not, the record owner of the property at that time.[1] The deed was recorded in the Madison land records on June 16, 1986. The First Savings Bank subsequently went through two name changes: as Omnibank of Connecticut, Inc., in 1987, and as the New England Savings Bank in 1993. The bank alleged that in 1991, Young initiated a lis pendens against Rohlman in favor of Young and recorded the lis pendens in the Madison land records, which was said to be subordinate to the bank's mortgage.[2] The bank also alleged that in 1992, Rohlman issued a quitclaim deed in favor of Rohlman and Matthew Beecher (Beecher), who is also a defendant in this case. The quitclaim deed was recorded in the Madison land records in 1992.[3] Beecher alleges that as tenants in common, he owned a 25 percent interest in the property and Rohlman a 75 percent interest.[4] They leased the property to the defendant, The Lobster Nest, Inc., which occupied the property before it was sold in 1999.
In 1993, the Federal Deposit Insurance Company (FDIC) was appointed the receiver of the failed New England Savings Bank and assigned the note and the deed to the plaintiff bank on September 13, 1993. The bank recorded the deed in the Madison land records on October 7, 1993. On June 12, 1996, the bank instituted a foreclosure action against the defendants, Rohlman, Young, Beecher and The Lobster Nest, Inc. in the Superior Court, judicial district of New Haven at New Haven, Docket No. 388060, alleging that Rohlman and Young had not paid installment principal and interest due on February 1, 1996, and every month thereafter. The bank declared a default and accelerated the due date of the entire balance. The bank sought a strict foreclosure of the mortgage, immediate CT Page 8982 possession of the mortgaged property, a deficiency judgment against Rohlman and Young among others. The defendant, Beecher, was defaulted for nonappearance in the action.
Meanwhile, Rohlman and Beecher became delinquent in paying real estate taxes from 1995 through 1997. On April 9, 1999, the town tax collector held a tax auction of the property to satisfy the delinquent taxes. The property was sold for $76,000 at the auction to the high bidders, Thomas and Genevieve Baross (Baross). The town set off the amount of delinquent taxes due, $20,177, plus $6,393.96 in accrued interest and fees, against the sale proceeds. A redemption date of October 9, 1999, was established pursuant to General Statutes § 12-157 (f). Baross negotiated with the bank for a waver of its right of redemption of the tax sale property adjoining his own property. The bank sent a letter to Baross, dated October 4, 1999, confirming that, pursuant to their discussion, the bank had enclosed an agreement (agreement) that Baross would pay the bank $19,000 by October 6, 1999, in exchange for "the Bank's giving up its right of redemption." Baross signed the agreement and paid the sum. The redemption date passed with no redemption, and Baross is now the record owner of the property. The town paid into the court the remaining balance (collectively, funds), consisting of $49,429 (surplus fund) and $1,297.35 interest (interest), generated during the town's possession of the surplus fund in the redemption period, pursuant to General Statutes § 12-157 (i)(1).[5]
In the wake of the tax sale of the property, which had extinguished the bank's mortgage on the property, the bank filed an amended complaint in its original action, Docket No. 388060, against the defendants, Rohlman and Young, on October 14, 1999, now seeking damages for breach of the note, attorney fees and costs. On October 21, 1999, Young, filed an answer with nine special defenses. There was no answer from Rohlman.
Around October 22, 1999, the town provided all the interested parties with a written notice of their right to file an application with the court for return of the funds.[6] About December 13, 1999, the town filed with the court an application for payment of the interest generated from the surplus fund.[7] On January 10, 2000, the bank instituted the present action, naming Rohlman, Beecher, Young, The Lobster Nest, Inc., and the town, as the defendants in its application for a determination of the priority in the equitable distribution of the funds and for an order to disburse the funds pursuant to General Statutes § 12-157 (i)(2).[8]
On the same day, Beecher filed an application for return of the funds to him pursuant to the same statute. Baross, purchaser of the property, filed an appearance and an application with the court on January 14, 2000, pursuant to the same statute, for a determination of the equity of the interested parties and return of a portion of the funds to him.[9]
CT Page 8983 On February 2, 2000, Beecher filed an objection, supported by a memorandum of law, to the town's application for payment of the interest. Beecher submitted another objection, supported by a memorandum of law, dated February 4, 2000, to Baross' application, arguing that Baross has no standing in the present action.
On February 14, 2000, the bank filed a motion in its related action, Docket No. 388060, to consolidate that action for damages and the present action for release of the funds. On the same date, the applicants in the present action, the bank, the town, Baross, Beecher and Young appeared at a pretrial hearing before the Honorable John N. Reynolds, S.T.R, to argue for return of the funds. The defendants, Rohlman and The Lobster Nest, Inc., did not appear at the hearing. Young's attorney appeared at the hearing, not to apply for return of the funds, but to contest the application by the town and Baross. Young supports the bank's application. Except for Beecher, the parties have not submitted their memoranda of law in support of their application for return of the funds. This memorandum of law is based on the transcript (transcript) of the parties' argument at the pretrial hearing.
 DISCUSSION
A. The Statute
This action for return of the funds remaining after a tax sale is governed by General Statutes § 12-157 (i), which provides:
 (1) If the sale realizes an amount in excess of the amount needed to pay all delinquent taxes, interest, penalties, fees, and costs, the amount of the excess shall be held in an interest-bearing escrow account separate from all other accounts of the municipality. (A) If the property is redeemed prior to the expiration of the redemption period, the amount held in escrow shall, within ten days of the tax collector receiving notice of redemption, be turned over to the purchaser. Any interest earned shall be the property of the municipality. (B) If the property is not redeemed in the redemption period, the amount held in escrow may be used to pay the delinquent taxes, interest, penalties, fees and costs on any other property of the taxpayer located in the town, including personal property and motor vehicles. In the case of subparagraph (B), the tax collector shall, within ten days of the expiration of the redemption period, pay to the clerk of the court for the judicial CT Page 8984 district in which the property is located the amount held in escrow remaining after paying the delinquent taxes, interest, fees, penalties and costs owed by the taxpayer to the municipality. The tax collector shall, within five days of the payment, provide notice to the delinquent taxpayer, any mortgagee, lienholder, or other encumbrancer of record whose interest in such property is affected by the sale, by certified mail, return receipt requested of the name and address of the court to which the moneys were paid, the person's right to file an application with the court for return of said money, and the amount of money paid to the court.
 (2) If the tax collector pays to the court any moneys pursuant to subparagraph (B) of subdivision (1) of this subsection, the delinquent taxpayer, any mortgagee, lienholder or other encumbrancer whose interest in such property is affected by the sale may, within ninety days of the date the tax collector paid the moneys to the court, file an application with the court for return of the proceeds. Any person may make an application for payment of moneys deposited in court as provided for in this subsection to the superior court for the judicial district in which the property that is the subject of the proceedings referred to is located, or if said court is not in session to any judge thereof, for a determination of the equity of the parties having an interest in such moneys. Notice of such application shall be served in the same manner as to commence a civil action on all persons having an interest of record in such property on the date the collector's deed is recorded. The court or judge upon such motion or upon its own motion may appoint a state referee to hear the facts and to make a determination of the equity of the parties in such moneys. Such referee, after providing at least ten days' notice to the parties interested of the time and place of hearing, shall hear the applicant and any parties interested, take such testimonies as such referee deems material and determine the equities of the parties having a record interest in such moneys and immediately report to the court or judge. The report shall contain a detailed statement of findings by the referee, sufficient to enable the court to determine the considerations upon which the referee CT Page 8985 based his conclusions. . . . If the report is accepted, such determination of the equities shall be conclusive upon all parties given notice of such hearing, subject to appeal to the Appellate Court.
In the present case, where no interested party redeemed the property after the tax sale, the town was required, pursuant to § 12-157 (i) (1)(B), to deposit with the court the funds remaining in its interest-bearing escrow account and notified all the interested parties their right to file an application for return of the funds.
B. The Town's Application for the Interest
It is undisputed that the town is not an interested party within the meaning of § 12-157 (i)(2). Having been fully satisfied of the delinquent taxes, interest, penalties, fees and costs, the town lays no claim, and can have no claim, on the surplus fund. The town argues, however, that it is entitled to the interest generated from the surplus fund, in the amount of $1,297.35, during the town's possession of the surplus fund in the redemption period. The town cites General Statute § 12-157 (i)(1)(A) to support its argument that it is entitled to the interest even in the absence of explicit statutory provision. While § 12-157 (i)(1)(A) explicitly permits a municipality to keep the interest if there is redemption, there is no such permission under §12-157 (i)(1)(B) for a municipality to keep the interest in the absence of redemption. The town argues, nevertheless, that because the interest provision is intended to compensate the town for the cost of its opening and maintaining an escrow account for any surplus fund it is entitled to the interest as compensation regardless whether there is redemption.
There is no case law on this point. The state referee must therefore be guided by the plain meaning of the statute and general principles of statutory construction. "When interpreting a statute, courts should accord a statutory enactment its plain meaning. . . . Moreover, the meaning of statutory language must be determined from a reading of the statute as a whole. . . . We may not, by construction, read a provision into legislation that is not clearly stated therein." (Internal quotation marks omitted.) Hyllen-Davey v. Plan Zoning Commission,57 Conn. App. 589, 595, ___ A.2d ___ (2000). "We are also mindful that `statutes in derogation of private rights should be strictly construed. . . .' (Citations omitted.) Spring v. Constantino, 168 Conn. 563, 570,362 A.2d 871 (1975)." Hutchinson v. Andover, 49 Conn. App. 781, 786,715 A.2d 831 (1998). Where a statute "creates a cause of action that was not available at common law, " "the language of the statute must be strictly construed." Holler v. Buclely Broadcasting Corp.,47 Conn. App. 764, 770, 706 A.2d 1379 (1998) (regarding the cause of CT Page 8986 action created under General Statutes § 52-570d for illegal recording of private telephone communications); see also Anthony Julian RR Constr.v. Mary Ellen Dr. Assoc., 50 Conn. App. 289, 296, 717 A.2d 294
(1998) ("Where a statutory right of action is at issue, the statute must be strictly construed, and the statutory remedy selected is the plaintiff's sole right of recovery.") (citations omitted; internal quotation marks omitted).
Strictly construed, § 12-157 (i) allows the town to keep the interest if there is redemption, but not if no redemption. Section 12-157
(i)(1)(B) explicitly provides that if there is no redemption the town may use "the amount held in escrow" to "pay delinquent taxes, interest, penalties, fees and costs on any other property located in the town, including personal property and motor vehicles." That would be the only taking of the funds remaining after the property tax sale authorized of the town by the statute in the absence of redemption. In our case, there is no evidence that the taxpayers, Rohlman and Beecher, owed taxes on any other property located in the town, so the tax collector was required to pay into the court all the funds remaining in the town's escrow account, including the interest accrued. Because the town's rights in the tax sale, including its right to keep the interest in case of redemption, are created by the statute, in derogation of common law and private rights, they should be strictly construed. See Hutchinson v. Andover, supra,49 Conn. App. 786; Holler v. Buclely Broadcasting Corp., supra,47 Conn. App. 770; Anthony Julian RR Constr. v. Mary Ellen Dr. Assoc., supra, 50 Conn. App. 296. Because the statute, strictly construed, does not authorize the town to keep the interest, the town does not get it. See Hyllen-Davey v. Plan Zoning Commission, supra, 57 Conn. App. 595.
C. Baross' Application
Baross, purchaser of the property at the tax sale, filed an application for return of a portion of the funds in this action. Specifically, Baross requests for return of the $19,000 that he paid to the bank on or about October 4, 1999, in exchange for the bank's waiver of its statutory right of redemption of the property. Even though Baross is not an interested party within the meaning of § 12-157 (i)(1), under § 12-157 (i)(2) "[a]nyone may make an application for payment of moneys deposited in court . . . to the superior court . . . for a determination of the equity of the parties having an interest in such moneys." See also General Statutes § 52-102[10]; Practice Book § 9-6.[11] Because Baross claims an interest in the funds, he has standing in this hearing to apply for a determination of the equities.
In the application and at the pretrial hearing, Baross' attorney asserts that Baross executed the agreement with the bank under the belief CT Page 8987 that he was purchasing the bank's rights in the note against Rohlman and Young and in the funds remaining after the tax sale held in escrow by the court. As his lawyer put it, Baross paid the bank $19,000 "under the assumption that Citizens Bank was going to walk away from the transaction altogether." (Transcript, p. 13.) Baross alleges that the bank misled or misinformed him with regard to their agreement, and he has received no consideration for the purchase of a waiver of the illusory right of redemption because the bank has not assigned to him its right to collect on the note. Baross' attorney mentioned three possible theories in support of Baross' application for return of the $19,000 payment. His attorney asserted that the agreement is invalid because (a) the bank had no statutory right to sell its right of redemption; (b) there was a mutual mistake as to a material fact in the execution of the agreement because the parties brought contrary assumptions to the deal; and (c) Baross received little or no consideration because it was "unheard of" that a purchaser paid $19,000, or a quarter of the property value, for a waiver of the right of redemption; Baross attorney asserted that the sum was excessive under any circumstances.
Baross has alleged no relevant facts to support any of his claims and his assertions have no merit. His attorney has cited no statutory or case law authorities in either the application or at the hearing to support his theories. The agreement between the parties is unambiguous on its face. The agreement states clearly that "by virtue of holding a Mortgage Deed on the subject real property," the bank "is entitled to redeem the property" within the statutory redemption period pursuant to General Statutes § 12-157. (Agreement, § 3.) "In consideration of Citizens Savings Bank not redeeming the subject property, Thomas Baross shall pay" to the bank $19,000. (Id., § 4.) "In the event that a third party, other than Citizens Savings Bank, redeems the subject property . . . all monies paid to Citizens Savings Bank by Thomas Baross shall be refunded to Thomas Baross and this Agreement shall be deemed null and void." (Id., § 5.) Conversely, "[i]n the event there is no redemption of the subject property by a third party on October 9, 1999,[12] the Nineteen Thousand and 00/100 ($19,000) Dollars shall be unconditionally released to Citizens Savings Bank and all claims or rights to said monies by Thomas Baross shall be deemed relinquished and/or waived." (Id., § 6.) There is no provision whatsoever in the agreement that purportedly assigns to Baross the bank's rights in the note or the funds held in escrow by the court. The agreement expressly provides only for the bank's waiver of its right of redemption in consideration for a $19,000 payment by Baross. The bank's cover letter, dated October 4, 1999, was also unambiguous that the agreement pertained to "Bank's giving up its right of redemption in exchange for payment" by Baross. At the pretrial hearing, Baross' attorney conceded that "an unvarnished reading of the document that was signed does not necessarily CT Page 8988 support our position." (Transcript, p. 13.)
Baross' attorney has cited no authority to show why the bank could not contract with Baross to sell its right of redemption, even if there is no statutory provision for such a sale. "[P]arties are free to contract for whatever terms on which they may agree [and] . . . a court must enforce the contract as drafted by the parties . . . unless the contract is voidable on grounds such as mistake, fraud or unconscionability." Gibsonv. Capano, 241 Conn. 725, 730-31, 699 A.2d 68 (1997).
Baross' assertion that the bank has also sold its interest in the underlying note to him by virtue of his purchase of the bank's right of redemption represents a unilateral misunderstanding of the law on his part. It is well established that "upon the default of the mortgagor, the mortgagee has multiple remedies against both the mortgagor and the mortgaged property. [T]he plaintiff is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both. A note and a mortgage given to secure it are separate instruments, executed for different purposes and, in this State, action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit." (Internal quotation marks omitted). New Milford Savings Bank v. Jajer, 244 Conn. 251, 266-67,708 A.2d 1378 (1998). Because the town's tax sale has preempted and extinguished the bank's initial strict foreclosure action in equity, the bank is left to pursue the other course of action at law.
Baross's assertion that the agreement is invalid because he has received no consideration for his payment is groundless, factually or legally. "Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." Gianettiv. Norwalk Hospital, 211 Conn. 51, 61, 557 A.2d 1249 (1989). "If a man by a promise induces the promisee or some other person on account of or for the benefit of the promisee, to do some act or part with some chattel, title, interest, privilege, or right, which the law regards as of some value, there is sufficient consideration for the promise." (Internal quotation marks omitted.) State ex rel. Marsh v. Lum, 95 Conn. 199, 204,111 A. 190 (1920). The agreement was executed within a week of the expiration of the redemption period, when redemption by the bank, if not the other interested parties, was still possible. A factfinder could find that the bank's waiver of its right of redemption was valuable to Baross: it may have been desirable for Baross to keep the property because of a bargain realized at the tax sale or a need to acquire the property adjacent to his own property. If the bank had exercised its right of redemption, Baross would have lost his contingent ownership of the property and he may have to pay a premium price to acquire the property in CT Page 8989 the commercial real estate market. Significantly, the waiver of the right of redemption by the bank, probably the only interested party that was financially able to redeem the property, enabled Baross to acquire an absolute title to the property, free of any mortgage, lien or encumbrance. See General Statutes § 12-157 (f). Whatever his motivation, which is immaterial here, Baross received a benefit from the bank's waiver of a valuable legal right, and the bank suffered a detriment to its interest when it waived the right. The consideration underlying the transaction is therefore legally sufficient. See Gianettiv. Norwalk Hospital, supra, 211 Conn. 61.
Because the facts show that Baross received a consideration for his payment, his alternative argument of inadequate consideration must also fail as a matter of law. "The doctrine of consideration does not require or imply an equal exchange between the contracting parties. That which is bargained-for by the promissor and given in exchange for the promise by the promisee is not made insufficient as a consideration by the fact that its value in the market is not equal to that which is promised. Consideration in fact bargained for is not required to be adequate in the sense of equality in value. . . . The general rule is that, in the absence of fraud or other unconscionable circumstances, a contract will not be rendered unenforceable at the behest of one of the contracting parties merely because of an inadequacy of consideration." (Internal quotation marks omitted.) State v. Lex Associates, 248 Conn. 612, 619,730 A.2d 38 (1999). "[I]t is only when the amount agreed upon is the result of fraud, misrepresentation, coercion, and unconscionable advantage taken or other inequitable conduct on the part of the attorney that a court can interfere." DiFranceso v. Goldman, 127 Conn. 387, 394,16 A.2d 828 (1940). "Courts do not unmake bargains unwisely made. Absent other infirmities, bargains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law." Robert Lawrence Associates, Inc. v. Del Vecchio, 178 Conn. 1,21, 420 A.2d 1142 (1979).
Baross asserts that the bank misled or misinformed him, but he has alleged no facts to support his assertion here. This referee therefore cannot consider his bare conclusion of law, unsupported by any facts alleged. In a different context, Baross would not even establish a cause of action because such unsupported assertions cannot survive a motion to strike. See Practice Book § 10-39; Gulack v. Gulack, 30 Conn. App. 305,309, 620 A.2d 181 (1993); Novametrix Medical Systems, Inc. v. BOCGroup, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). Baross' attorney also hinted that the agreement was unconscionable because he had never heard of someone paying a quarter of the value of the property for a waiver of the right of redemption. (Transcript, p. 15.) "The classic definition of an unconscionable contract is one which no man in his CT Page 8990 senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." (Internal quotation marks omitted.) Smith v. Mitsubishi Motors Credit of America, Inc.,247 Conn. 342, 349, 721 A.2d 1187 (1998). Because there is nothing in the record to show that the deal between the parties was other than an arm's length transaction, Baross' assertion that the agreement was unconscionable or that the bank took advantage of him in the deal must fail as a matter of law.
Finally, Baross' attorney asserted at the hearing that Baross was mistaken in his assumption (unilateral mistake) or, alternatively, both the bank and Baross were mistaken in their assumptions (mutual mistake), so there was no meeting of the minds in the execution of the agreement. "An action for reformation rests on the equitable theory that the instrument sought to be reformed does not express the intention of the parties because it was executed as the result of mutual mistake or unilateral mistake coupled with fraud or inequitable conduct on the part of the other party. Greenwich Contracting Co. v. Bonwit ConstructionCo., 156 Conn. 123, 126, 239 A.2d 519 (1968)." Shawmut Bank Connecticutv. Conn. Limousine Serv., 40 Conn. App. 268, 273, 670 A.2d 880 (1996). Baross does not have a cause of action for reformation based on his unilateral mistake because he has not alleged any facts to show that the bank's conduct was fraudulent in the transaction. See Gebbie v. CadleCo., 49 Conn. App. 265, 276, 714 A.2d 678 (1998), quoting Restatement 2d of Contracts §§ 152, 153 ("[A]ccording to general principles of contract law, rescission based on a mistaken understanding of the terms of an agreement is available only where the mistake is mutual, or where one party's mistake has been caused by the other party's fraud.")
The mutual mistake theory also does not avail Baross in this case. "A mutual mistake is one that is common to both parties and effects a result that neither intended." Inlands Wetlands Watercourses Agency v.Landmark Investment Group, Inc., 218 Conn. 703, 708, 590 A.2d 968
(1991). "Mutual mistake" exists only where both parties are mutually mistaken about the same material fact, and not where they simply disagree on the meaning of the contract. See Dainty Rubbish Service v. Beacon HillAssn., 32 Conn. App. 530, 537, 630 A.2d 115 (1993) (reversing the trial court's finding of mutual mistake because there was "no evidence that both parties were mutually mistaken about the same fact"; they "simply disagreed on the meaning of the contract"). Baross has not alleged any facts to show that both parties were mistaken about the same facts, and the record does not show the existence of a genuine issue of mutual mistake. On the contrary, both the agreement and the bank's letter were unambiguous that the bank agreed only to waive its right of redemption, before the statutory period of redemption expired, in consideration of Baross' payment. Because Baross has only asserted his disagreement with, CT Page 8991 or at most unilateral misunderstanding of, the plain meaning of the agreement, but has not alleged any facts to show that mistake was mutual in the execution of the agreement, he does not have a cause of action for contract reformation based on the theory of mutual mistake.
Unless Baross alleges facts showing fraud or other unconscionable conduct on the part of the bank in the execution of the agreement, Baross' application must fail as a matter of law.
D. Beecher's Application
Beecher's standing in the present action rests on the fact that he is an interested party within the meaning of General Statutes § 12-157
(i)(1) for being a former record owner of the property. He was named a defendant in the bank's original foreclosure action and was defaulted for nonappearance. However, he has turned active in the present case, and has submitted two memoranda of law to support his opposition to the application by the town and Baross for return of the funds. In addition, he has applied for return of the entire funds to himself, but has not submitted a memorandum of law to justify his claim here. He has not provided any information regarding his acquisition of an ownership interest in the property prior to the tax sale. If it is true that Beecher's interest in the property was based on a quitclaim deed issued by Rohlman in favor of Beecher and Rohlman, as alleged by the bank in the original complaint filed in its original foreclosure action, then Beecher's interest under the quitclaim deed would be restricted to Rohlman's interest under the mortgage deed, that is, Beecher's interest would be subordinate to the bank's first-priority interest in the mortgage.[13] See General Statutes § 47-36f.[14] Absent consent by the mortgagee bank, the mortgagor, Rohlman, would not be able to transfer the absolute title, free from the lien of the mortgage, to Beecher and himself. See 59 C.J.S., Mortgages § 383 (1998). A purchaser of the property already under mortgage takes only the mortgagor's equity of redemption, and his title is taken subject to the mortgage and is not better or stronger than that of his grantor.[15]
Id., § 388. Where land is sold subject to a mortgage, the mortgagee's lien on the land continues, and as between the mortgagor, the mortgagee, and the purchaser the land is the primary fund for the satisfaction of the encumbrance. Id., § 390. There is no evidence that the bank had ever waived the encumbrance on Beecher's interest in the property prior to the tax sale.
The record does not show how much Rohlman and Young are still indebted to the bank under the note. It is likely that even a full recovery by the bank of the funds held by the court cannot satisfy the bank's damages under the note. It is therefore doubtful that any other party having an CT Page 8992 interest of record in the property, Beecher included, can look to the funds for recovery of his or her interest after the satisfaction of the bank's first-priority claim. In addition, if Beecher's interest in the property was based on a quitclaim deed, which would provide him with no warranties of any kind for his interest, it is dubious that he has any legally enforceable claim in the property against any other party in this action. Be it as may, because Beecher has not alleged any facts to show why he is entitled to return of the funds, and unless he does so, this referee cannot even consider his claim and must dismiss his application.
E. The Bank's Application
"The remedy of a mortgagee for nonpayment is either at law on a promissory note if the mortgagor has signed a note, or in equity for foreclosure of the mortgage. New Milford Savings Bank v. Jajer,244 Conn. 251, 260, 708 A.2d 1378 (1998)." Fernandes v. Rodriguez,54 Conn. App. 444, 449, 735 A.2d 871 (1999). Because the town's tax sale has extinguished the bank's strict foreclosure action, the bank must resort to the other remedy at law to collect on the note for compensation, and the bank has done so by having transformed its earlier action in equity into an action at law for breach of the note in the related case, Docket No. 388060, against the defendants, Rohlman and Young. On the basis of its first-priority mortgage interest of record in the property, it is appropriate for the bank to instigate the present action in equity, under General Statutes § 12-157 (i)(2), to seek return of the funds to satisfy its first-priority interest in the note formerly secured by its first-priority mortgage interest. If both actions proceed to trial, it would be necessary for the court to grant the bank's motion to consolidate the two actions because the adjudication of this action is contingent on the determination of liability and damages in the other action. See Practice Book § 9-5(a).[16]
Because no other party has disputed the bank's claim that it has a first-priority interest in the note previously secured by a first-priority mortgage interest, and no other party has shown any enforceable interest of record in the property, there should be no doubt that the bank has a first-priority entitlement to the funds, provided that the bank prevails in the related note collection action. In view of the sizable amount of loan originally due under the note that was secured by the bank's first-priority mortgage on the property, it is likely that the entire funds, including the interest accrued during the period of redemption, will go to the bank, and the bank will still claim a deficiency in the recovery under the note.
F. Young's Position
CT Page 8993
Even though Young has not applied for return of the funds to herself and sided with the bank in this action, she has filed an answer with nine special defenses in the bank's other action under the note. Because the bank's entitlement to the funds in this action is dependent on a finding of liability and determination of damages against Young and Rohlman in the related action under the note, it is necessary to consolidate the two actions for a complete settlement of the controversy. See Practice Book § 9-5(a). Because this action for return of the funds remaining after a tax sale is grounded in equity, the state referee has broad equitable powers to determine, sua sponte if necessary, the equities of the parties and the grounds of their claims under General Statutes §12-157 (i)(2). See State v. Thornton, 55 Conn. App. 28, 31, 739 A.2d 271
(1999);[17] Hope's Architectural Prod., Inc. v. Fox Steel Co.,44 Conn. App. 759, 763, 692 A.2d 829 (1997).[18]
Even though Young has not presented such argument in the present action, this referee finds it necessary, for a complete determination of the equities under § 12-157, to mention that the $19,000 payment that the bank received from Baross must be credited against the bank in its possible recovery of damages from Young and Rohlman in the note collection action. This adjustment is necessary to avoid windfall to the bank in its note collection action. "The general rule of damages in a breach of contract action is that the award should place the injured party in the same position as he would have been in had the contract been performed."Rametta v. Stella, 214 Conn. 484, 492, 572 A.2d 978 (1990). If not adjusted, the bank would recover more than its entitlement under the note. The adjustment is also necessary on equitable grounds: the bank could have redeemed the property and probably realized a better value for the property, thereby reducing liability for Young and Rohlman under the note, but chose to be paid $19,000 in waving the right of redemption. Similarly, any damages the bank recovers in the other action must also be adjusted by its recovery of the funds in this action.
CONCLUSION
Unless any other party shows otherwise, the bank is entitled to return of the entire funds held in escrow by the court if it prevails in the other action for breach of the note. The town does not get the interest because there is no statutory provision. Baross' refund claim fails as a matter of law absent any showing of fraud or mutual mistake, because under the agreement that he freely executed with the bank he has relinquished all rights and claims to his payment in exchange for the bank's waiver of its statutory right of redemption.
John N. Reynolds Judge Trial Referee CT Page 8994