[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: CROSS MOTIONS FOR SUMMARY JUDGMENT (#146 148)
The defendants' motion for summary judgment asserts that there is no genuine issue of material fact regarding the three agreements as there was no "meeting of the minds" and the letters dated 7/31/97 and 8/8/97 cannot form the basis for an enforceable contract for the royalties sought by the plaintiffs.
The plaintiff's partial summary judgment motion asserts that there is no dispute as to issues of material fact regarding the three agreements and that the appropriate format for the case is a hearing in damages. The defendants object to the plaintiffs' partial summary judgment motion on the basis asserted by the plaintiff because they assert that the issue of liability needs to be resolved before proceeding to a hearing in damages.
The dispute concerns the effect of the non-disclosure/non-circumvention agreement signed by the parties and its scope. Two other documents submitted, a letter dated July 7 and a letter dated August 8, concern an alleged agreement by the defendants to pay certain royalties to the plaintiff on certain "confidential" accounts. The problem arose when the defendants purchased a business called "Coverdell". The plaintiff argues that the documents presented prove that this company was on the confidential list, and that the defendant had agreed to pay royalties to the plaintiff on this account for any sale of programs. The plaintiffs argue that the acquisition of Coverdell by the defendants is a breach of the non-disclosure/non-circumvention agreement and that they are entitled to damages. The defendants argue that this is not a breach of the CT Page 1297-cs non-circumvention/non-disclosure agreement between the parties as this agreement was nothing more than a recognition that the parties were working together and exchanging confidential information. The defendants further assert that the acquisition of Coverdell cannot be a breach of this agreement because they did not divulge any confidential information to a third party, which is what the language of the agreement states. The defendants assert that an acquisition was not included in the non-disclosure/non-circumvention agreement.
The letter dated 7-31-97 lists the accounts that are to be considered confidential and part of the non-disclosure agreement. The letter states that the defendant will not market directly to any of the accounts listed and will pay the plaintiff a fee to be determined on a case by case basis for any sale of programs. The plaintiffs argue that this letter constitutes an enforceable contract between the parties. The plaintiffs contend that the absence of a specific fee is not fatal to this contract and the court can assume the fee is to be reasonable. The defendants assert that this letter was not a contract, but merely an agreement to agree. The defendants further assert that no fee agreement was ever established with regard to Coverdell, and that deposition testimony of both the plaintiffs' and the defendants' witnesses establish this fact.
The letter dated 8-8-97 lists programs that were being offered to Coverdell and a percentage that the plaintiff would receive upon sale of these programs. The plaintiff asserts that this letter is an enforceable contract because the language in the letter states, "confirming our discussion". The plaintiffs also assert that there is nothing stated in this letter which allowed the defendants to circumvent the original non-disclosure/non-circumvention agreement. The defendants assert this letter is not a contract as it lacks the definition of critical terms such as "net revenue" and "wholesale". The defendants argue that even if this letter was a contract, no sales of the programs listed were made to Coverdell prior to the acquisition and therefore, no royalties are owed.
"A contract is to be construed as a whole and all relevant provisions will be considered together. . . . In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties. . . . In ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish. . . . The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used. . . . This is so where the parties have CT Page 1297-ct their agreement in writing . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction on the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms."O'Bryan v. O'Bryan, 67 Conn. App. 51, 55-56, ___ A.2d ___ (2001). Further, "[t]he existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence. . . . To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding of the parties." Richter v. Danbury Hospital,60 Conn. App. 280, 288, 759 A.2d 106 (2000).
As can be seen from the competing claims of the parties genuine issues of material fact exist concerning the documents and their scope.
Accordingly, both motions for Summary Judgment are denied.
RUSH, J.