[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
INTRODUCTION
This is an action by the Town of Coventry ("the Town") to foreclose various municipal tax liens the Town holds on real property owned by the Defendant, Frank L. Hastings. In the first count of the Third Amended Complaint dated August 2, 2001, the Town claims that Hastings is the owner of property located in Coventry known as Lot No. 27A Babcock Hill Road and that taxes properly assessed on the property from October 1, 1992 to October 1, 2000 in the amount of $21,362.93 are due and payable. The Town also alleges that it has properly recorded Certificates of Liens for these taxes on the land records.
In the Second Count of the Third Amended Complaint, the Town claims that Hastings owns property known as Lot No. 27 Pucker Street and that taxes properly assessed on that property from October 1, 1994 to October 1, 2000 in the amount of $8,596.29 are due and payable. The Town also alleges that it has properly recorded Certificates of Liens for these taxes on the land records.
Trial was held on the Amended Complaint on August 2, 2001 and post-trial briefs were filed on September 17, 2001.[1] On October 18, 2001 Hastings filed a petition in bankruptcy and this action was stayed. On November 27, 2001 the Bankruptcy Court modified the automatic stay in order to permit this court to render a decision in this matter.
FINDINGS OF FACT
Pursuant to Practice Book § 10-70:
(a) In any action to foreclose a municipal tax or assessment lien the plaintiff need only allege and CT Page 1573 prove: (1) The ownership of the liened premises on the date when the same went into the tax list, or when said assessment was made; (2) that thereafter a tax in the amount specified in the list, or such assessment in the amount made, was duly and properly assessed upon the property and became due and payable; (3) (to be used only in cases where the lien has been continued by certificate) that thereafter a certificate of lien for the amount thereof was duly and properly filed and recorded in the land records of the said town on the date stated; (4) that no part of the same has been paid; and (5) other encumbrances as required by the preceding section.
 (b) When the lien has been continued by certificate, the production in court of the certificate of lien, or a certified copy thereof, shall be prima facie evidence that all requirements of law for the assessment and collection of the tax or assessment secured by it, and for the making and filing of the certificate, have been duly and properly complied with. Any claimed informality, irregularity or invalidity in the assessment or attempted collection of the tax, or in the lien filed, shall be matter of affirmative defense to be alleged and proved by the defendant.
Hastings admitted ownership of the properties in question. The parties also stipulated that the requirements of subsections (a)(2), (3) and (4) are satisfied by Exhibit 1, the "Delinquent Tax Work Sheet," and that what appears in that Exhibit would be the testimony of the tax collector. Exhibit 1 details the taxes, interest and lien fees for each piece of property. These amounts total $37,925.84 for the Babcock Hill Road property and $13,722.20 for the Pucker Street property. The parties also stipulated that the liens have been filed and that the prima facie evidence rule of § 10-70 (b) applies. Lastly, the parties stipulated that the only other encumbrance on the properties was that identified in the complaint as the mortgage to Twachtman. Thus there was no dispute as to the allegations of the complaint and the court finds that the allegations of the complaint have been proven true.
Hastings filed a special defense to this foreclosure, however, stating that: "the plaintiff is estopped from a foreclosure because it violated the terms of a contract between it and Frank L. Hastings, which contract was partially completed and was intended to pay the debt which is the subject of this suit and thereby avoid litigation."[2] At trial, CT Page 1574 Hastings claimed that he was pursuing only a finding that he was not liable for interest from the claimed date of the breach of the agreement, that is, December 1997. In support of his defense, Hastings presented the testimony of John Elsesser, the Town Manger of Coventry, and testified himself. Based upon that evidence the court finds the following facts.
Elsesser has been Town Manager of Coventry since 1988. On August 19, 1997 he met with Hastings and his counsel to attempt to work out a payment plan for Hastings' past due property taxes. They discussed an exchange or barter by the Town of sand from Hastings' gravel operation as well as a twenty-four or twenty-eight month payment period. Elsesser suggested that Hastings submit a bid to provide sand to the Town the following winter. No firm agreement was reached at that time and Hastings was advised that the Town Council would have to approve any agreement.
Subsequently, in October 1997, Hastings did submit a bid to provide sand to the Town and the Town accepted it. In November, Hastings began making deliveries of sand to the Town.
Between October and December 1997, different drafts of an agreement were exchanged between the parties. On October 13, 1997, the Town's attorney faxed Hastings' attorney a draft of an agreement providing for monthly payments of $1,550, over a two year period, on the taxes dues, and an agreement by the Town to forebear initiating any litigation to collect the taxes if the monthly payments were made. On November 19, 1997 the Town's attorney faxed Hastings' attorney another draft agreement which provided for payments of $1,400 per month. On December 15, 1997, the Town's attorney forwarded another draft agreement to Hastings' attorney indicating that it was different from those previously submitted because the previous proposals were not acceptable to the Coventry Town Council. The new draft provided for monthly payments of $1,400 and that any payments by the Town pursuant to an agreement or contract with Hastings for materials, goods or services from Hastings would be credited as an offset against the moneys owed the Town by Hastings. The agreement also provided that "in the event that any such contract requires Hastings to deliver sand or gravel to the Town, the Town may, but shall not be obliged to, pay the trucking costs directly, in which event the amount of such payments shall not be credited or offset against the total amount of taxes, interest, and lien fees then due and owing to the Town by Hastings." That agreement was signed by Elsesser and also forwarded by him to Hastings with a cover letter stating that it was what was authorized by the Town Council on December 15, 1997 and that, if Hastings accepted the agreement, the Town would pay trucking expenses of $2.00 per cubic yard. Elsesser also indicated that unless Hastings responded in the affirmative by December 29th, Elsesser would turn over all funds from CT Page 1575 Hastings' invoices to the Tax Collector and turn Hastings' tax delinquency over to the Town's attorney for processing. This agreement was the only one authorized by the Town Council and the only one Elsesser was authorized to sign.
Hastings did not respond to Elsesser's letter and on December 31, 1997 Elsesser wrote Hastings advising him that since he had refused to deliver any more sand and that on two occasions stones within Hastings' sand had damaged Town sanders, the Town was cancelling their purchase order with him. In addition, Elsesser noted that Hastings had not responded to the proposed agreement by the deadline and therefore he was turning over Hastings' tax delinquency to the Town attorney.
Hastings did not sign the agreement approved by the Town Council because he did not want the Town withholding the full amount of any moneys due him for the sand he delivered to the Town because he needed those funds for excavation and delivery of the sand. Essentially, Hastings wanted the Town to finance the costs of producing the sand and delivering the sand he agreed to provide the Town. He stopped providing sand to the Town because he claimed he had no money to pay those costs.
DISCUSSION
Hastings claims that the Town must be estopped from pursuing this foreclosure because it breached its agreement with him. The Town claims that estoppel is not available as a defense to a foreclosure action. Courts have restricted the defenses that are available in an action seeking the foreclosure of a municipal tax lien to those related to the making, validity or enforcement of the lien. City of Middletown v. 180Johnson Road, Inc., 1998 WL 13926 (Conn.Super.). Hastings' claim of estoppel based on an agreement unrelated to the making, validity or enforcement of the liens is therefore not a proper defense to this matter. Even if it were, his claim is without merit.
Hastings claims that the agreement that was violated by the Town here was that entered into by the parties at the meeting in August 1997. More specifically, he claims that there were two interdependent agreements: first, that he would bid on and secure a contract to deliver sand to the Town, thereby receiving funds to pay the taxes, and, second, that he and the Town would establish a payment plan for the back taxes, which plan would be funded by the sand contract. The language which Hastings uses to describe the so-called "agreement" itself recognizes the lack of any agreement. It is basic that in order to have a agreement there must be a "meeting of the minds." "`[T]he burden rest[s] on the [party claiming an agreement] to prove a meeting of the minds to establish its version of the claimed contract.' Bridgeport Pipe Engineering Co. v. DeMatteoCT Page 1576Construction Co., 159 Conn. 242, 246, 268 A.2d 391 (1970) . . . the issue of contract formation is a question of fact. "The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence. . . . To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties.' (Internal quotation marks omitted.) Richter v. Danbury Hospital, 60 Conn. App. 280,288, 759 A.2d 106 (2000)." Cheverie v. Ashcraft Gerel, 65 Conn. App. 425,439 (2001). By Hastings' own characterization of the agreement, the lack of a meeting of the minds is clear. There were no assurances by the Town that it would accept Hastings bid to provide sand or at what price. Nor was there any agreement as to the terms of any repayment schedule. No agreement was reached at the August meeting. At most, the parties agreed to the broad outlines of a possible resolution of Hastings' tax debt and to continue to negotiate the details of such a resolution. The parties, as evidenced by the draft agreements that were exchanged by the parties and never fully executed, never reached agreement as to the terms of a resolution.
"`[E]stoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. Bozzi v. Bozzi,177 Conn. 232, 242, 413 A.2d 834 (1979); Dupuis v. Submarine Base CreditUnion, Inc., 170 Conn. 344, 353, 365 A.2d 1093 (1976); Pet CareProducts, Inc. v. Barnett, 150 Conn. 42, 53-54, 184 A.2d 797 (1962).' (Internal quotation marks omitted.) Boyce v. Allstate Ins. Co., supra,236 Conn. 385." Union Carbide Corp. v. City of Danbury, 257 Conn. 865,873 (2001). The defendant's claim of estoppel here must failed based on that standard. There was no agreement between the parties and the Town never represented that there was one such as to induce Hastings to take any action as a result. Hastings' claim that he would not have submitted such a low bid for the sand contract had he not been obligated under the tax payment agreement, was unsupported by the evidence.
In any event, until the meeting of the Town Council on December 15, 1997 the Town Manager had no authority to enter into a binding agreement with Hastings. Hastings claims that Elsesser had apparent authority to bind the Town prior to that time. This claim must fail because Elsesser advised Hastings at the August meeting that the Town Council would need to approve any agreement. Hastings admits that Elsesser indicated that the Town Council would have to approve any agreement allowing for payment of his taxes over a period of two years. "`The issue of apparent CT Page 1577 authority is one of fact, requiring the trier of fact to evaluate the conduct of the parties in light of all the surrounding circumstances . . .' Edart Truck Rental Corp. v. B. Swirsky Co., 23 Conn. App. 137, 140,579 A.2d 133 (1990). `The issue of apparent authority is . . . to be determined based on two criteria. . . . First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. . . . Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action.' (Citations omitted; internal quotation marks omitted.) Tomlinson v. Board ofEducation, supra, 226 Conn. 734-35." Hall-Brooke Foundation, Inc. v. Cityof Norwalk, 58 Conn. App. 340, 345-346 (2000). Based on the evidence presented here Elsesser had authority to negotiate only. Early on he had advised Hastings that any agreement would need Town Council approval. He could not bind the Town and Hastings was aware of that. Therefore Elsesser did not have apparent authority to agree to resolve this matter unilaterally with Hastings.
Since there was no agreement between the Town and Hastings regarding this matter, Hastings' Special Defense must fail.
JUDGMENT
Judgment of foreclosure by sale may enter for the plaintiff, Town of Coventry. The debt due to the Town is found to be $37,925.84 for the Babcock Hill Road property and $13,722.20 for the Pucker Street property as of August 1, 2001. The matter shall be scheduled for further hearing regarding the terms of sale, updated interest owed on the debt, as well as a determination of the fair market values of the properties and other fees and costs.
Scholl, J.