[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an application for prejudgment remedy. The plaintiff is Incor Group, Inc. and the defendant is Polied Environmental Services, Inc. The controversy between the parties relates to the removal of asbestos on the U.S. Submarine Base in Groton, Connecticut. CT Page 3345
 "General Statutes § 52-278d (a) permits a trial court to grant a prejudgment remedy if "the plaintiff has shown probable cause that . . . a judgment will be rendered . . . in the plaintiffs favor. . . ." We emphasize that a hearing on an application is not a full-scale trial on the merits of the plaintiffs' claims; Fischel v. TKPK, Ltd., 34 Conn. App. 22, 24, 640 A.2d 125 (1994); Hoke, Inc. v. Circuits, Inc., 26 Conn. App. 804, 805, 602 A.2d 1075 (1995); but rather concerns only whether and to what extent the plaintiff is entitled to have property of a defendant held in custody of the law pending final adjudication of the merits of the action. Tyler v. Schnabel, 34 Conn. App. 216, 220, 641 A.2d 388 (1994)." Bosco v. Arrowhead by The Lake, Inc., 53 Conn. App. 873, 874
(1999).
 "General Statutes § 52-278d (a) provides that a trial court may issue a PJR if it determines that there is "probable cause to sustain the validity of [the plaintiffs] claim." It is firmly established that the trial court's hearing in probable cause is not intended to be a full scale trial on the merits of the plaintiffs claim. "The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. . . ." (Internal quotation marks omitted.) Calfee v. Usman, 224 Conn. 29, 37, 616 A.2d 250 (1992). Probable cause for purposes of the PJR statutes is a flexible common sense standard that does not demand that a belief be correct or more likely true than false. Goodwin v. Pratt, 10 Conn. App. 618, 621, 524 A.2d 1168
(1987)." Fischel v. TKPK, Ltd., 34 Conn. App. 22, 24
(1994).
The plaintiffs claim for a prejudgment remedy is premised upon the court finding that: (1) the parties entered into an agreement as shown in Exhibit 2 coupled with Exhibit 3, and (2) that agreement was breached. The court finds these documents, Exhibits 2 and 3, did not comprise an agreement between the parties. The court finds that the plaintiff failed to sustain its burden of proof, to the standard of probable cause, regarding this issue. CT Page 3346
The court finds the following facts. On or about April 4, 2001, the plaintiff Incor Group, Inc. entered into a contract with USA Contractors for the removal of asbestos at Dolphin Gardens apartment buildings on the United States Navy Submarine Base in Groton, Connecticut. Incor was to remove asbestos from 383 units to ready them for demolition, for a contract price of $1,649,900.00.
Incor Group contracted with the defendant Polied Environmental to perform all of the work within the scope of the plaintiffs contract with USA Contractors. Discussions ensued regarding this work. On or about April 16, 2001, John Nericcio, Project Manager and Estimator for the plaintiff, sent a proposed contract to the defendant to perform the job for $1.43 million. Polied Environmental never signed the proposed contract. That proposed unsigned agreement would have required the defendant to remove all asbestos pursuant to specifications provided by Dewberry and Davis.
After April 16, 2001, the defendant communicated with the plaintiff regarding certain issues pertaining to performing the job. Before signing any agreement, the defendant wanted in writing:
(1) Alternative Work Practices[1] (AWP) to be permitted for the asbestos abatement,
(2) Permission to house its workers at the Sub Base during the work week, and
(3) Payment of $10,000 per week until full payment at the end of the agreement.
The defendant was under the supervision from the plaintiff, at the inception of the work, that alternative work practices had been approved for the asbestos abatement.
The defendant bid the job at $1.43 million based upon acceptance of AWPs for the job. The plaintiff was aware that AWPs were the basis for that bid.
The defendant proceeded to start work when requested by the plaintiff, without a signed contract, on May 16, 2001. Initially, the defendant had approximately 33 workers on the job. After one week of work, John Fitrzyk, principal of Polied, called the plaintiff for the first $10,000 payment. He was told it would be ready the next week. It was not. From May 16, 2001 to July 27, 2001, the defendant worked at the project site without any payment. CT Page 3347
Approximately three weeks into the job, the site was 85-90% prepped for asbestos removal with AWPs and the preabatement demolition was completed for these areas. At that time, a representative of the U.S. Navy (owner of the project site) appeared at the site and informed Fitrzyk that AWPs were not approved and, therefore, the additional site preparation would be needed. Fitrzyk complained to the plaintiffs representative; the result was a change order of $500 per unit for this additional work for the first 51 units.
On June 12, 2001, the plaintiff sent correspondence to USA Contractors that their contract would cost another $192,000 if the AWPs were not approved.
On July 17, 2001, Fitrzyk was told that his men and stored equipment in the buildings would have to be out of Navy Housing by 5:00 P.M. that date. This was apparently the result of concern that some of the men had utilized stoves for heat in an unusually cold summer.
As of July 17, 2001, the defendant had been paid nothing despite having made repeated requests and having received assurances of payment from the plaintiff, AWPs had not been approved and the defendant had no housing, outside of paying for motels for his workers (who largely lived in New York).
After two months on the job, the plaintiff informed the defendant that they needed certified payrolls in order to receive payment. This was a term of the original agreement proposed by the plaintiff, not signed by the defendant. Plaintiff was also required to have certified payrolls to be in compliance with its contract with USA Contractors. Defendant supplied certified payrolls for the first four weeks of work. Still no payment had been made. Defendant, consequently, has not certified any more of the payroll weeks.
Defendant's workers remained on the job until July 27, 2001. After being ordered out of Dolphin Gardens, defendant housed the workers in hotels at its cost. After one last futile attempt to receive partial payment from the plaintiffs was made, the defendant walked off the job after July 27, 2001. On July 31, 2001, plaintiff ordered defendant to stay off the job site, informing defendant it had taken over the project.
AWPs were approved about a week or so after the defendant walked off the job. By then, plaintiff had arranged with another subcontractor to complete the job.
The plaintiffs original contract for the job was $1,649,900.00. The job CT Page 3348 cost if defendant had performed would have been $1,430,000.00, without any change orders. Plaintiff credits defendant for certain change orders, bank charges and the like against the contract amount for a net contract after adjustment of $992,093.17. The job cost plaintiff $1,162,992.75. Therefore plaintiff claims a loss of $170,899.58 plus lost profit of $89,288.39 (representing 9 percent). These sums total an overall loss claim of $268,187.92 that plaintiff asserts defendant is liable to it for, as a result of a breach of contract, by walking off the job.
Plaintiff has asserted that Exhibits 1 and 2, when taken together comprise the contractual agreement between the parties. The court finds that the plaintiff has failed to establish this to a probable cause standard.
 "Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action. One Fawcett Place Ltd. Partnership v. Diamandis Communications, Inc., 24 Conn. App. 524, 525, 589 A.2d 892 (1991). "The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim." Id.; Fischel v. TKPK, Ltd., 34 Conn. App. 22, 26, 640 A.2d 125 (1994)." Tyler v. Schnabel, 34 Conn. App. 261, 219-220 (1994).
The defendant is also asserting as a defense, set off and/or counterclaim, a claim for damages it asserts under the agreement as it understood it had with plaintiff. That claim is for amounts of work unpaid, equipment left behind that it was not permitted to retrieve, lost profit on its understanding of the contract and associated costs.
. . . "the burden rested on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract." Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co., 159 Conn. 242, 246, 268 A.2d 391 (1970). It failed to acknowledge, however, that the issue of contract formation is a question of fact. "The trier on the basis of all the evidence. . . . To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical CT Page 3349 understanding by the parties." (Internal quotation marks omitted.) Richter v. Danbury Hospital, 60 Conn. App. 280, 288, 759 A.2d 106 (2000).
After considering all the evidence and reviewing the demeanor of the parties, the court finds there was never a signed agreement, but it was in essence agreed that the defendant would do the job for $1,430,000, using AWPs and housing defendant's men on the site. The court finds that, although there was no agreement as to how this contract sum would be paid, the defendant did not agree to wait until the end of the job for payment. Further, the defendant was misled by the plaintiff into believing payments would be forthcoming shortly if the defendant's men would just keep working. The court finds the plaintiff has failed to establish to a probable cause standard that the defendant violated any agreements that existed between the parties.
The court finds the plaintiff has failed to establish to a probable cause standard that the plaintiff is entitled to recover its asserted damages against the defendant.
The application for prejudgment remedy is denied.
 ___________________ Munro, J.